UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| 4950 WOODWAY PH2, LLC and | § | |
| ADRIAN PETERSON | § | |
| *Plaintiffs* | § | |
| | § | |
| v. | § | Civil Action No. 4:19-cv-2615 |
| | § | |
| CERTAIN UNDERWRITERS AT | § | |
| LLOYD'S, LONDON | § | |
| *Defendant* | § | |

## PLAINTIFFS' ORIGINAL COMPLAINT & JURY DEMAND

Plaintiffs 4950 WOODWAY PH2, LLC ("4950 Woodway") and ADRIAN PETERSON ("Peterson") (collectively "Plaintiffs") files this Original Complaint & Jury Demand against Defendant CERTAIN UNDERWRITERS AT LLOYD'S, LONDON ("Lloyd's" or "Defendant") and would respectfully show the following:

### Parties

1.  4950 Woodway is a domestic limited liability company located and operating in the State of Texas.

2.  Peterson is a resident and citizen of the State of Texas.

3.  Upon information and belief Lloyd's is a foreign surplus lines insurance company engaged in the business of insurance in Texas, operating for the purposes of accumulating monetary profit. Lloyd's regularly conducts the business of insurance in a systematic and continuous manner in the State of Texas. Lloyd's may be served with process by serving its registered agent certified mail, return receipt requested, to **MENDES & MOUNT, 750 Seventh Avenue, New York, NY 10019-6829.**

1

## Venue & Jurisdiction

4. This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a) because there is complete diversity of citizenship between Plaintiffs and Defendant and the amount in controversy exceeds the sum of seventy-five thousand dollars ($75,000.00), exclusive of interests and costs.

5. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiffs' claim occurred within this judicial district, and the property subject of the action is situated within this judicial district. Namely, this action concerns real property in Harris County, Texas. The insurance policy at issue and of which Plaintiffs are a beneficiary was to be performed within this district, and the losses under the policy (including payments to be made to Plaintiffs under the policy) were required to be made within this district. Further, investigation, including communications to and from Defendant and Plaintiffs (including telephone calls, mailings, and other communications to Plaintiffs) occurred within this district.

**Factual Background**

*The Property*

6.     Plaintiffs own the residential property located at 2 Rivercrest Drive, Houston, Texas 77092 in Harris County, Texas (the "Property").



The Property is a three-story main house with a guest house and gymnasium situated on 153,331 square feet of land with 11,384 square feet of interior space.

*The Policy*

7.     Prior to 2017, Plaintiffs paid annual premiums, assessments, fees, surcharges, and taxes to Lloyd's to acquire comprehensive homeowner's insurance coverage for the Property under Lloyd's Policy No. L16291016 (the "Policy"). The Policy provides coverage for Plaintiffs' dwelling, other structures, personal property, and loss of use for covered damages that occur during the Policy Period, from June 19, 2016 through June 19, 2017. In exchange for Plaintiffs' premium payment, the Policy includes the following limits and coverages, in relevant part:

1) The following location is added to the policy:

   2 E Rivercrest Drive, Houston, Texas 77092

   Coverage A:  US$ 6,000,000
   Coverage B:  US$   600,000
   Coverage C:  US$ 1,000,000
   Coverage D:  US$   150,000

   Coverage E:  US$ 1,000,000
   Coverage F:  US$    10,000

   US$ 25,000 AOP deductible except US$100,000 in respect of windstorm and hail

8. As evidenced by the Declarations Page, the Policy provides coverage to the Property's physical structure on a replacement cost value basis for damages up to $6,000,000; for other structures up to $600,000; for personal property for damages up to $1,000,000; and for loss of use up to $150,000.00. *See* Ex. A, Policy, at Endorsement Number 1.

*Plaintiffs makes an insurance claim for damage*

9. As a result of water intrusion at the Property, there was substantially damage. Sizeable portions of the Property's roof on the main house, guest house, and gymnasium were compromised. As a result, there was also interior damage to ceilings, walls and flooring in multiple rooms and areas. The following photographs depict some of the damage:

4

 

10. There was also significant damage to the roof:

 

11. The Property—specifically the roof, ceilings, and flooring—were substantially damaged. Yet as devastating as the physical damage was, Plaintiffs felt fortunate to be protected by over $7,000,000 in insurance coverage it had procured to insure the Property from precisely this type of catastrophe. Plaintiffs promptly filed a claim with Lloyd's, alerting them to the

5

extensive damages. This sense of security, borne of a pricey contractual relationship, would prove illusory as Lloyd's began their investigation and handling of the claim.

*Lloyd's is a foreign surplus lines insurer selling policies in Texas without accountability*

13. Because Lloyd's does not have one single employee in Texas, they assigned CJW Associates ("CJW") to handle the claim. CJW is one of several adjusting firms, often referred to as a third-party administrator, that have sprouted to service the foreign, absentee insurance market led by Lloyd's. Although Texas law provides that an insurer has a "non-delegable duty" to responsibly handle claims, delegate is precisely what foreign insurance entities like Lloyd's do on a regular basis. Claims decisions are delegated to third-party administrators like CJW with limited oversight by Lloyd's. Claim settlement authorities are granted to these entities, but they are done on a restrictive, one-size-fits all limited basis that bears no relationship to the claim at hand. Oftentimes, claims are not even reported to the actual insurance company until a third-party administrator such as CJW decides it rises to a level that merits the insurer's attention. In this type of absentee insurer environment, claims standards and guidelines become arbitrary and are routinely outsourced. Adjuster training is deferred, or simply never happens. Financial incentives are turned on their head, as the third-party administrators and adjusters, and the managers who oversee them, are compensated with bonuses and incentives tied to profitability manufactured by claim denials. The absentee structure of Lloyd's is such that it is virtually impossible to comply with Texas law concerning claims handling guidelines and the prohibition on delegating these guidelines. But for foreign insurance entities shielded by oceans and a vacuum of regulatory oversight, delegation to third party administrators has become the new normal.

*Lloyd's retains adjusters and consultants to begin adjusting the claim; Plaintiffs work hard to document its damages for Lloyd's but received a denial.*

14. Lloyd's utilized its preferred vendor, CJW, to handle adjustment of the claim on its behalf. CJW's adjustment was disorganized, rife with delays, and left many of the insured's questions unanswered. Plaintiffs hired its own representative to assist with the claims process, but CJW's adjusters continuously ignored Plaintiffs' representative in an effort to intentionally mislead the insured about the claims process and ultimately deny the claim.

15. The CJW and Lloyd's adjuster assigned to the claim to Halliwell Engineering Associates ("Halliwell"). CJW and Lloyds refused to provide any scopes of damage. Lloyd's, CJW, and Halliwell failed to complete an adequate inspection and refused to acknowledge all the damages to the Property. Months after the Property was substantially damaged and after the claim was made, CJW still refused to accept the damages on behalf of Lloyd's or provide any answers to the insured. Moreover, Lloyd's refused to retain any appropriate consultants to evaluate the claim. The claim was finally denied on August 15, 2018. Specifically, Halliwell stated that the moisture intrusion was not caused by a single event, there was improper installation and wear and tear. *See* Exhibit B, Denial Letters. Remarkably, despite acknowledging "extensive water damage" at the Property, the companies simply pointed to boiler-plate exclusions under the Policy and not supported by any relevant facts or data. *See* Exhibit B.

16. To this day, Lloyd's has refused to pay for any covered damages under the Policy.

*Plaintiffs send a demand letter in compliance with Texas law*

17. On June 1, 2017, Governor Abbott signed House Bill 1774 into law as Section 542A of the Texas Insurance Code. This new law was sponsored by approximately sixty state representatives and senators and contains important consumer protections against a variety of

7

unscrupulous practices. Particularly, Section 542A.003 requires detailed, comprehensive presuit notice that is intended to make the claims and litigation processes more transparent and potentially even avoid unnecessary lawsuits. Upon receiving notice, an insurer has a right to conduct an inspection, and even make an offer to avoid litigation. When utilized properly, Section 542A should assist business consumers like Plaintiffs to avoid protracted litigation over a clear claim.

18. In compliance with Section 542A.003, Plaintiffs gave its pre-suit notice to Lloyd's on April 30, 2019. The pre-suit notice provided a comprehensive outline of Plaintiffs' claim and damages, quantified its loss, and even offered to waive a formal claim for attorneys' fees if the contractual amounts were paid promptly.

19. Lloyd's responded to the demand on July 15, 2019 but refused to acknowledge its own wrongdoing.

## Count 1 – Violations of Texas Insurance Code, Section 541

20. Plaintiffs re-allege and incorporate each allegation contained in previous paragraphs of this Complaint as if fully set forth herein.

21. Lloyd's failed to attempt to effectuate a prompt, fair, and equitable settlement of a claim with respect to which liability has become reasonably clear, in violation of Texas Insurance Code Section 541.060 (a)(2)(A).

22. Lloyd's failed to adopt and implement reasonable standards for prompt investigation of the claim arising under its policy.

23. Lloyd's failed to provide promptly a reasonable explanation, in relation to the facts or applicable law, for the denial of a claim, in violation of Texas Insurance Code Section 541.060 (a)(3).

24. Lloyd's refused to pay the claim without conducting a reasonable investigation with respect to the claim, in violation of Texas Insurance Code Section 541.060 (a)(7).

25. Lloyd's misrepresented the insurance policy under which it affords property coverage to Plaintiffs, by making an untrue statement of material fact, in violation of Texas Insurance Code Section 541.061 (1). Lloyd's misrepresented the insurance policy to Plaintiffs, by making an untrue statement of material fact, in violation of Texas Insurance Code Section 541.061 (1).

26. Lloyd's misrepresented the insurance policy under which it affords property coverage to Plaintiffs by failing to state a material fact that is necessary to make other statements made not misleading, in violation of Texas Insurance Code Section 541.061 (2). Defendant misrepresented the insurance policy to Plaintiffs by failing to state a material fact that is necessary to make other statements made not misleading, in violation of Texas Insurance Code Section 541.061 (2).

27. Lloyd's misrepresented the insurance policy under which it affords property coverage to Plaintiffs by making a statement in such manner as to mislead a reasonably prudent person to a false conclusion of material fact and failing to disclose a matter required by law to be disclosed, in violation of Texas Insurance Code Section 541.061 (3) and Texas Insurance Code Section 541.002 (1). Defendant misrepresented the insurance policy to Plaintiffs by making a statement in such manner as to mislead a reasonably prudent person to a false conclusion of material fact and failing to disclose a matter required by law to be disclosed, in violation of Texas Insurance Code Section 541.061 (3) and Texas Insurance Code Section 541.002 (1).

28. Lloyd's knowingly committed the foregoing acts, with actual knowledge of the falsity, unfairness, or deception of the foregoing acts and practices, in violation of Texas

Insurance Code Section 541.002 (1).

### Count 2 – Violations of the Texas Insurance Code, Section 542

29. Plaintiffs re-allege and incorporate each allegation contained in previous paragraphs of this Complaint as if fully set forth herein.

30. Lloyd's failed to acknowledge receipt of the claim in violation of Texas Insurance Code Section 542.055 (a)(1).

31. Lloyd's failed to timely commence investigation of the claim or to request from Plaintiffs any additional items, statements or forms that Lloyd's reasonably believed to be required from Plaintiffs in violation of Texas Insurance Code Section 542.055 (a)(2)-(3).

32. Lloyd's failed to notify Plaintiffs in writing of the acceptance or rejection of the claim not later than the 15th business day after receipt of all items, statements and forms required by Defendants in violation of Texas Insurance Code Section 542.056(a).

33. Lloyd's delayed payment of Plaintiffs' claim in violation of Texas Insurance Code Section 542.058(a).

34. Each of the actions described herein were done "knowingly" as that term is used in the Texas Insurance Code and were a producing cause of Plaintiffs' damages.

### Count 3 – Statutory Interest

35. Plaintiffs re-allege and incorporate each allegation contained in previous paragraphs of this Complaint as if fully set forth herein.

36. Plaintiffs makes a claim for statutory interest penalties along with reasonable attorneys' fees for violation of Texas Insurance Code Subchapter B pursuant to Texas Insurance Code Section 542.060.

### Count 4 – Breach of Contract

37. Plaintiffs re-allege and incorporate each allegation contained in previous paragraphs of this Complaint as if fully set forth herein.

38. As outlined above, Lloyd's breached its contract with Plaintiffs by refusing to pay for covered damages under the Policy. As a result of Lloyd's breach, Plaintiffs suffered legal damages.

### Count 5 – Breach of duty of good faith & fair dealing

39. Plaintiffs re-allege and incorporate each allegation contained in previous paragraphs of this Complaint as if fully set forth herein.

40. Lloyd's, as the property coverage insurer, had a non-delegable duty to deal fairly and in good faith with Plaintiffs in the processing of the claim. Lloyd's breached this duty by refusing to properly investigate and effectively denying insurance benefits. Lloyd's knew or should have known that there was no reasonable basis for denying or delaying the required benefits. As a result of Lloyd's breach of these legal duties, Plaintiffs suffered legal damages.

### Count 6 – Punitive Damages for Bad Faith

41. Plaintiffs re-allege and incorporate each allegation contained in previous paragraphs of this Complaint as if fully set forth herein.

42. Defendant acted fraudulently and with malice (as that term is legally defined) in denying and delaying Plaintiffs' claim for benefits. Further, Defendant had actual, subjective awareness of the risk involved, but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of Plaintiffs.

### Count 7 – Violations of Texas Deceptive Trade Practices Act

43. Plaintiffs re-allege and incorporate each allegation contained in previous paragraphs of this Complaint as if fully set forth herein.

44. The Texas Deceptive Trade Practices Act (DTPA) provides additional protections to consumers who are victims of deceptive, improper, or illegal practices. Defendant's violations of the Texas Insurance Code create a cause of action under the DTPA. Defendant's violations of the Texas Insurance Code, as set forth herein, specifically violate the DTPA as well. Defendant has also acted unconscionably, as that term is defined under the DTPA.

45. Each of the actions described herein were done "knowingly" as that term is used in the DTPA and were a producing cause of Plaintiffs' damages.

## Resulting Legal Damages

46. Plaintiffs are entitled to the actual damages resulting from the Defendant's violations of the law. These damages include the consequential damages to its economic welfare from the wrongful denial and delay of benefits including loss of the property and business; and the other actual damages permitted by law. In addition, Plaintiffs are entitled to exemplary damages.

47. As a result of Defendant's acts and/or omissions, Plaintiffs have sustained damages in excess of the minimum jurisdictional limits of this Court.

48. Plaintiffs are entitled under law to the recovery of prejudgment interest at the maximum legal rate.

49. Defendant's knowing violations of the Texas Insurance Code and DTPA entitle Plaintiffs to the attorneys' fees, treble damages, and other penalties provided by law.

50. Plaintiffs are entitled to statutory interest as damages under the Texas Insurance Code 542.060(c).

51. Plaintiffs are entitled to the recovery of attorneys' fees pursuant to Tex. Civ. Prac. & Rem. Code §38.001, Texas Insurance Code 542.060(a)-(c), and Tex. Bus & Commerce Code

§17.50.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiffs respectfully request that Plaintiffs have a judgment against Defendant for actual damages in excess of the minimum jurisdictional limits of this Court, pre- and post-judgment interest as allowed by law, costs of suit, and all other relief, at law or in equity, to which Plaintiffs may be entitled.

Respectfully submitted,

**RAIZNER SLANIA, LLP**

_____
JEFFREY L. RAIZNER
State Bar No. 00784806
Southern District Bar No. 15277
ANDREW P. SLANIA
State Bar No. 24056338
Southern District Bar No. 1057153
AMY B. HARGIS
State Bar No. 24078630
Southern District Bar No. 1671572
BEN WICKERT
State Bar No. 24066290
Southern District Bar No. 973044
efile@raiznerlaw.com
2402 Dunlavy Street
Houston, Texas 77006
Phone: 713.554.9099
Fax:   713.554-9098
**ATTORNEYS FOR PLAINTIFFS**

## **JURY DEMAND**

*Plaintiffs hereby demands a trial by jury, a right enshrined in the Constitution of the United States of America and the State of Texas and preserved by the sacrifices of many.  The necessary jury fee has been paid.*

_____

**ANDREW P. SLANIA**